**Susan SHINKMAN, Petitioner**

v.

**STATE EMPLOYEES' RETIREMENT BOARD, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 11, 2008.

Decided Oct. 16, 2008.

Alaine S. Williams, Philadelphia, for petitioner.

Nicholas Joseph Marcucci, Deputy Chief Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and FRIEDMAN, Judge and LEAVITT, Judge.

OPINION BY Judge PELLEGRINI.

Susan Shinkman (Claimant) appeals a decision of the State Employees' Retirement Board (Board) denying with prejudice her request to purchase her prior state service credit in an amount less than her total prior state service. Because the Board's interpretation of the State Employees' Retirement Code (Code)[1] requiring members who want to purchase any of their previous state service credit to purchase *all* of their previous state service is not plainly erroneous, we affirm the Board's decision.

The facts of this case are not in dispute. Claimant first became a member of the State Employees' Retirement System (SERS) when she was employed by the Department of Labor and Industry from April 1, 1976, through October 9, 1979. During that time, she earned 3.8181 years of Class A state credited service. When she left her employment with the Commonwealth, she withdrew the contributions and interest from her retirement account. It is not clear from the record what she did between 1979 and 1984, but from 1984 through 1991, Claimant was employed by the City of Philadelphia. She completed an "Application for Service Credit Under Municipal Retirement System for Governmental Service Prior to City Employment" and sought to purchase service credit for her Commonwealth employment from April 1, 1976, through October 9, 1979, in order to have the required 10 years of service necessary to vest in the City of Philadelphia's pension plan. As a result of her purchase of her Commonwealth service, she became eligible for a pension from the City of Philadelphia.

Claimant left the City of Philadelphia's employment and rejoined SERS in 1992 when she became re-employed by the Department of Labor and Industry as Chief Counsel from January 6, 1992, through January 20, 1995. During that period of employment with the Commonwealth, she earned 3.1136 years of Class A state credited service. When that second period of employment with the Commonwealth ended, she again withdrew her contributions and interest from her retirement account. Claimant reactivated her SERS membership a third time on May 5, 2003, when she was re-employed by the Commonwealth. She remains employed by the Commonwealth to this day as Chief Counsel to the Department of Environmental Protection and is an active Class AA member of SERS.

In June 2003, Claimant sent a letter to SERS requesting a "cost statement" for her first two periods of Commonwealth employment—January 1992 to January 1995; and April 1976 to October 1979. She indicated that she had purchased some of her prior service time to qualify for a City of Philadelphia pension and inquired if that time could be used again to purchase service credit with SERS. SERS initially responded by advising Claimant that it had confirmed her purchase of prior Commonwealth service with the City of Philadelphia Board of Pensions and Retirement, and that there was no impediment under the Code to purchasing the prior state service that she used to vest in the City of Philadelphia, and it enclosed an invoice of the amount due. The letter, however, noted that purchase of this time might impact on her City of Philadelphia

1. 71 Pa.C.S. §§ 5101–5956.

pension, and that SERS intended to notify the City of Philadelphia of her inquiry.[2] Claimant began receiving a monthly benefit of $1,428 from the City of Philadelphia Board of Pensions and Retirement effective February 25, 2004.

In April 2005, the City of Philadelphia Board of Pensions and Retirement notified Claimant that Section 22–802 of the City Pension Code had an anti-double-dipping provision that prohibited an employee from purchasing pension credit for other governmental employment if the time would be used to qualify for another pension. Claimant then notified SERS that she did not intend to purchase prior service for the period of April 1, 1976, through April 18, 1979, which was the period she purchased to qualify for the City of Philadelphia pension. She also notified the City of Philadelphia Board of Pensions and Retirement of the same. However, a few weeks later, SERS notified Claimant that it had denied her request to purchase only a portion of her previous state service relying on Section 5504(a) of the Retirement Code, 71 Pa.C.S. § 5504(a). Specifi-

cally, the letter stated that she was "only eligible to purchase all of your prior state service or none of it."

Claimant filed an appeal, and a hearing was held before a hearing examiner. The hearing examiner recommended that the Board deny her request to purchase prior state service credit in an amount less that her total previous state service, which recommendation the Board adopted. This appeal by Claimant followed.[3]

■ The only issue involved is a question of statutory interpretation.[4] Section 5504(a) of the Retirement Code provides the following:

**(a) Amount of contributions for service in other than Class G through N.**—The contributions to be paid by an active member or eligible school employee for credit for *total previous State service* other than service in Class G, Class H, Class I, Class J, Class K, Class L, Class M and Class N or to become a full coverage member shall be sufficient to provide an amount equal to the regular and additional accumulated deduc-

---

2. The letter stated, in relevant part:

The State Employees' Retirement System's (SERS) legal office has reviewed this issue and has determined that there is no statutory provision against purchasing prior state service that is credited in another retirement plan. Therefore, SERS cannot prohibit the granting of otherwise creditable state service. In fact, the State Employees' Retirement Code mandates that all state service be credited.

❖ ❖ ❖

By way of this letter, we are informing the Board of Pensions and Retirement of your intent to purchase this service. It will be your responsibility to contact them to determine what affect this purchase might have on your retirement benefit with the Board of Pensions and Retirement. If you purchase this service, SERS will notify the Board of Pensions and Retirement that you have done so.

(Original Record, SERS Ex. 2.)

3. Our scope of review of the Board's determination is limited to whether it is supported by substantial evidence, whether the decision is in accordance with the law, or whether constitutional rights were violated. *Jones v. State Employees' Retirement Board*, 830 A.2d 607 (Pa.Cmwlth.2003).

4. Under the Statutory Construction Act, the object of interpretation and construction of all statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). As a general rule, the process of ascertaining the intention of the General Assembly begins with the plain language of a statute. *Commonwealth v. Gilmour Manufacturing*, 573 Pa. 143, 822 A.2d 676 (2003). Where the words of the statute are clear and free from ambiguity, the legislative intent is to be gleaned from those words. *Pennsylvania School Boards Association v. PSERS*, 580 Pa. 610, 863 A.2d 432 (2004).

tions which would have been standing to the credit of the member for such service had regular and additional member contributions been made with full coverage in the class of service and at the rate of contribution applicable during such period of previous service and had his regular and additional accumulated deductions been credited with statutory interest *during all periods of subsequent State and school service* up to the date of purchase. (Emphasis added.)

Claimant contends that the Board's interpretation of Section 5504(a) is incorrect because the statute does not require an "all or nothing" purchase of state service. Rather, Claimant interprets the Code to require the Board to provide active members of the system with their service credits even if partial credits only are desired to be purchased. She points out that nowhere in the Code does it explicitly state that a member must purchase all of their service credit or they are entitled to none of their credits, and several sections of the Code state that members *shall* receive credit or points, e.g., § 5302(a) of the Code, 71 Pa.C.S. § 5302(a); § 5303(b) of the Code, 71 Pa.C.S. § 5303(b); and § 5307 of the Code, 71 Pa.C.S. § 5307, thus indicating that the General Assembly intended for members of the system to

receive all of their credits for state service when requested for purchase.

Although Claimant is essentially arguing that the word "total" does not include the member's entire previous service, aside from the obvious dictionary interpretation which does not support her argument,[5] an understanding of how SERS calculates a member's contribution and purchase of credits aids in interpreting the statute.[6] Section 5504(a) requires the contributions to be paid by an active member for credit for "total previous state service" which shall be sufficient to provide an amount equal to the regular and additional accumulated deductions which would have been standing to the credit of the member for "such" service. First, the Board explains that Section 5504(a) requires that the contribution amount include interest which is credited during "all periods of subsequent state service" up to the date of purchase.[7] Further, the Board points out that SERS could not accurately calculate the interest due if "all" state service was not purchased and credited. If total compensation and interest were not calculated for all state service that was purchased and credited, members could manipulate the purchase price formulas. Additionally, the Board explains that the amount of contribution the member must make is equal to the regular and additional accumulated deductions which would have been standing to

---

**5.** "Total" is defined as "comprising or constituting a whole; entire; absolute; an entire quantity." Webster's Ninth New Collegiate Dictionary 1246 (1989).

**6.** Because the Board is the agency charged with the execution and application of the Code, it is entitled to great deference in its interpretation of the Code and the regulations promulgated thereunder. Therefore, its statutory interpretation of the Code may not be overturned unless it is clearly erroneous. *McCormack v. State Employees' Retirement Board,* 844 A.2d 619 (Pa.Cmwlth.2004).

**7.** Similarly, the Board's regulation found at 4 Pa.Code § 245.4 provides:
   **Member contributions for the purchase of credit for previous State service or to become a full coverage member.**
   *Multiple service election.* A school employe and a member of the Public School Employees' Retirement System may, if he elects multiple service, apply for and receive credit for **total previous State service,** provided he makes the required member contributions for the purchase of previous State service, regardless of the amount of State service previously credited, if any. (Emphasis added.)

the member's credit for her total previous state service. Because the purchase formula requires contributions for the member's total previous state service, it is a reasonable conclusion that the purchase of previous state service is intended to be for the "total" and not a portion of the previous state service.

Additionally, Section 5905, 71 Pa.C.S. § 5905(a), dealing with the duties of the Board regarding applications and elections of members, provides that as soon as a new member becomes active in the system, the Board shall issue a statement to the member stating her contribution rate and the "aggregate length of **total previous state service** and creditable non-state service for which she may receive credit." Similarly, Section 5907(d), 71 Pa.C.S. § 5907(d), requires an active member who desires to receive credit for her "total previous state service" to notify the Board so that upon written agreement, the member shall receive credit for such service.[8] It appears that in repeatedly using the term "total," the General Assembly deliberately chose to use the word "total" when referring to periods of service rather than "a portion of" or some other term denoting less than the entire amount of state service. Despite Claimant's contention, nowhere in the Code is there any language that suggests a member can purchase only a portion of her state service.

Claimant also argues that the Board's interpretation unjustifiably punishes her because it will require her to forfeit her prior state service. She claims that she was not provided with any forewarning that she would forfeit her right to purchase her state service if she purchased into the City of Philadelphia retirement system. Additionally, she contends the legislature could not have intended to deprive employees of their retirement benefits who are found in such a predicament.

■ Claimant is not being punished by SERS; any losses she may suffer are strictly a result of the City of Philadelphia's municipal pension system and its enforcement of its double-dipping rules. SERS has not prevented Claimant from using her prior state service in both SERS and the City of Philadelphia municipal pension system. The Board aptly noted, "What Claimant is attempting to do is pick and choose what service credit she can apply to the various benefits she has accrued during her career. The object of her exercise, of course, is to obtain the maximum possible benefit from both Philadelphia's municipal pension system and SERS. Claimant's attempt to do this runs up against the fact that the Philadelphia City Council has adopted a pension statute that will not allow her to do both." (Board's September 27, 2007 decision at 16.) As we see it, this is neither a problem created by SERS nor the result of incorrectly interpreted language in Section 5504(a) of the Code.

Accordingly, the order of the Board is affirmed.

FRIEDMAN, J., files a concurring opinion.

---

8. We also note that Section 5311(a) of the Code, 71 Pa.C.S. § 5311(a), regarding eligibility for refunds, states the following regarding "Total accumulated deductions:"

> Any active member, regardless of eligibility for benefits, may elect to receive his **total accumulated deductions** upon termination of service in lieu of any benefit to which he is entitled. (Emphasis added.)

"Total accumulated deductions" is defined at 71 Pa.C.S. § 5102 as: "The *sum* of the regular accumulated deductions, additional accumulated deductions, the social security integration accumulated deductions, and *all* other contributions paid into the fund for the purchase of credit for service or other coverage together with *all* statutory interest credited thereon until the date of termination of service." (Emphasis added.)

## *ORDER*

AND NOW, this 16th day of October, 2008, the order of the State Employees' Retirement Board, dated September 27, 2007, is affirmed.

## CONCURRING OPINION BY Judge FRIEDMAN.

I reluctantly concur. Like the majority, I conclude that the State Employees' Retirement Board's (Board) interpretation of the State Employees' Retirement Code (Code)[1] as requiring members who want to purchase credit for prior state service to purchase *all* such service is not clearly erroneous. I write separately, however, to express my belief that the language of the Code does not compel such an interpretation and to voice my concern with the inequity imposed by such a reading of the Code.

This case of first impression presents a unique set of facts that likely was never contemplated by the legislature when it enacted the Code's buy-back provisions. Susan Shinkman (Claimant) worked for the Commonwealth on three different occasions. She first became a member of the State Employees' Retirement System (SERS) by virtue of her initial state employment in April 1976. When she left in October 1979, after earning 3.8181 years of credited state service, she withdrew her contributions and interest from her SERS account. From 1984 until 1991, Claimant was employed by the City of Philadelphia (City) and participated in the City's pension plan. Before leaving that employment, Claimant exercised the option provided by the City plan to purchase service credit for her initial period of state employment and, thereby, accrued the ten years required to vest in the City plan.[2] Claimant rejoined SERS in January 1992 but terminated this second period of state service in January 1995, after earning 3.1136 years of credited service, again withdrawing the contribution and interest from her SERS account. Claimant became a SERS member for a third time in May 2003, when she was re-employed by the Commonwealth.

Upon her return, Claimant sought to repurchase her two prior periods of state service, and SERS approved the request. However, when the City informed Claimant that she could not receive credit for state service under the City pension plan if she obtained credit for it in SERS, Claimant asked to purchase SERS credit only for her period of prior state service not credited by the City. SERS denied Claimant's request. Relying on the General Assembly's reference to "total State service" in subsection 5504(a) of the Code, 71 Pa. C.S. § 5504(a),[3] SERS informed Claimant

---

1. 71 Pa.C.S. §§ 5101–5956.

2. Upon turning 55, Claimant began to receive her monthly pension from the City.

3. Section 5504 of the Code governs member contributions for the purchase of credit for previous state service, and subsection (a) provides:

   (a) **Amount of contributions for service in other than Class G through N.**—The contributions to be paid by an active member or eligible school employee for credit for *total previous State service* other than service in Class G, Class H, Class I, Class J,

   Class K, Class L, Class M and Class N or to become a full coverage member shall be sufficient to provide an amount equal to the regular and additional accumulated deductions which would have been standing to the credit of the member for *such* service had regular and additional member contributions been made with full coverage in the class of service and at the rate of contribution applicable during such period of previous service and had his regular and additional accumulated deductions been credited with statutory interest during *all periods* of subsequent State and school service up to the date of purchase.

that, if she wants to purchase *any* of her previous state service, she is obligated to purchase *all* of it.

This interpretation of subsection 5504(a) of the Code has been upheld by the Board and, as I previously acknowledged, such an interpretation is not clearly erroneous and, thus, must be affirmed by this court. *McCormack v. State Employees' Retirement Board*, 844 A.2d 619 (Pa.Cmwlth. 2004). However, while subsection 5504(a) sets forth "[t]he contributions to be paid ... for credit for *total* previous State service," 71 Pa.C.S. § 5504(a), it does not preclude members from seeking to restore less than total state service, if that is what they choose to do. In fact, SERS itself observes that, while the Code does not expressly authorize a partial purchase of service credit, it also does not expressly prohibit it. (Board op. at 18; R.R. at 172a.) Thus, I submit that this ambiguous statutory provision could have been interpreted to permit Claimant's requested purchase and that such an interpretation would have been equally valid.

Alternatively, SERS could have interpreted Claimant's request as a repurchase of the *total* of her *remaining* prior state service, i.e., the period of service not otherwise being utilized toward a City pension, at the time of her reentry into SERS in 2003. In this way, SERS would have given meaning to the statutory language and applied its "all or nothing" rule, thereby avoiding an interpretation that would authorize incremental purchases or allow employees to pick and choose which years of prior service they want to repurchase.

71 Pa.C.S. § 5504(a) (emphasis added).

Although the Board is not permitted to circumvent the express language of the Code, it must liberally administer the retirement system in favor of the members of the system. *Beardsley v. State Employes' Retirement Board*, 691 A.2d 1016 (Pa.Cmwlth.1997). A statute designed to confer a benefit on employees should be liberally construed consistent with its intended purpose. *Gault v. Public School Employees' Retirement Board*, 720 A.2d 1090 (Pa.Cmwlth.1998). Here, the Code confers a benefit on members by providing a mechanism by which they may purchase prior service, and Claimant had a legitimate expectation that she would be able to apply all her years of state service toward her state pension. To this end, she was willing to return accumulated deductions sufficient to cover the entire period of prior state service not applied to the City's pension plan. I believe she should have been entitled to do so.

However, when presented with this matter of first impression, SERS chose to interpret the governing statutory provision in a manner that is disadvantageous to the employee it is intended to benefit. Although constrained to defer to the Board's interpretation, I feel that it is contrary to the intent behind the pension provisions and, frankly, is unjust.